UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TIMIKA S.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CASE NO. C19-6104-BAT

**ORDER REVERSING THE COMMISSIONER'S DECISION**

Plaintiff seeks review of the denial of her applications for Supplemental Security Income and Disability Insurance Benefits. She contends the ALJ erroneously discounted her testimony, and certain medical opinions. Dkt. 10 at 1. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff is currently 41 years old, has a high school diploma and some college education, and has worked as a waitress, office coordinator, and truck dispatcher. Tr. 56, 293-94. In January 2017, she applied for benefits, alleging disability as of March 1, 2013. Tr. 266-75. Her applications were denied initially and on reconsideration. Tr. 168-83, 186-99. The ALJ conducted a hearing on August 14, 2018 (Tr. 36-112), and subsequently found Plaintiff not

disabled. Tr. 15-30. As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1-6.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Plaintiff had not engaged in substantial gainful activity since the alleged onset date.

**Step two:** Plaintiff had the following severe impairments: left ankle crush injury, scoliosis of the lumbar spine, mild degenerative disc disease of the cervical spine, major depressive disorder, and posttraumatic stress disorder.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity ("RFC"):** Plaintiff can perform light work with additional limitations: she can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps or stairs. She can stoop, kneel, crouch, and crawl. She can perform simple, routine tasks. She can perform jobs that involve no contact with the public. She can perform jobs with a sit/stand alternative, which is defined as the ability to change position after 30-60 minutes for 3-5 minutes while remaining on task.

**Step four:** Plaintiff cannot perform her past work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, she is not disabled.

Tr. 15-30.

## DISCUSSION

**A.   Plaintiff's testimony**

The ALJ discounted Plaintiff's testimony because (1) the objective medical evidence was inconsistent with her alleged physical symptoms and limitations, (2) she applied for several jobs during the adjudicated period, and (3) Plaintiff's allegations of mental limitations were

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

inconsistent with her sporadic engagement in treatment and her improvement with medication. Tr. 21-24. Plaintiff argues these reasons are not clear and convincing, as required in the Ninth Circuit. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

First, Plaintiff argues the ALJ erred in citing objective medical evidence as the basis for discounting her allegations of physical limitations. According to Plaintiff, the ALJ merely cited evidence without explaining why that evidence was significant or how it was inconsistent with Plaintiff's allegations. Dkt. 10 at 12-13. However, the ALJ specifically contrasted the evidence related to the testing (or lack thereof) performed on Plaintiff's back, which showed at most mild abnormalities, with her allegations of severe symptoms, and also cited evidence where Plaintiff denied swelling as inconsistent with her allegations of "swelling and edema that borders on the extreme[.]" Tr. 21-22. The ALJ also noted despite Plaintiff's claims of significant physical limitations, she was able to perform her activities of daily living. Tr. 23 (citing Tr. 858). The ALJ did not simply summarize the medical evidence that supported her RFC determination, as in *Brown-Hunter v. Colvin*, cited by Plaintiff. *See* Dkt. 10 at 13 (citing 806 F.3d 487, 491-95 (9th Cir. 2015)).

Plaintiff contends she never claimed her leg swelling was constant, and thus the ALJ's identification of Plaintiff's denials of swelling on occasion would not be inconsistent with her allegations. Dkt. 10 at 14. But Plaintiff testified at the administrative hearing that her foot swelling requires her to elevate her legs and prevents her from wearing normal shoes, such that she has to wear slippers or flip-flops even to church, and she testified that her feet were starting to go numb at the administrative hearing. Tr. 78-79. The evidence showing Plaintiff rarely reported swelling is reasonably inconsistent with her allegations of her need to elevate her legs due to swelling.

ORDER REVERSING THE COMMISSIONER'S DECISION - 3

1	Plaintiff also notes the ALJ found she had not had any nerve conduction studies and
2	contrasted that with her doctor's diagnosis of nerve damage.  Dkt. 10 at 15 (citing Tr. 21).
3	Plaintiff argues the ALJ did not explain the significance of this finding, but the ALJ's point is not
4	obscure: the ALJ indicated "there are no significant findings within the spine to explain the
5	claimant's symptoms and complaints" (Tr. 21 (citing Tr. 691)), and went on to note that although
6	Plaintiff had been diagnosed with scoliosis and nerve damage with sciatica, any "assertion of
7	nerve damage" was not supported by the record due to the lack of nerve conduction studies.  Tr.
8	21; *see also* Tr. 694 (finding although Plaintiff reported she had scoliosis, her lumbar MRI did
9	not show scoliosis, or "disc protrusion or spinal canal stenosis or significant neural foraminal
10	narrowing to explain [her] symptoms").  The ALJ's decision reasonably determined that the
11	physical symptoms and limitations Plaintiff reported were not supported by objective medical
12	evidence; the ALJ accordingly did not err in discounting Plaintiff's allegations on this basis.
13	The ALJ also pointed to evidence showing Plaintiff applied to multiple jobs during the
14	adjudicated period, which the ALJ interpreted as "suggesting that her symptoms were not as
15	severe as alleged."  Tr. 23 (citing Tr. 747, 811).  Plaintiff reported she was told that she was not
16	hired for these jobs due to her scores on personality testing (Tr. 811), and Plaintiff argues her
17	inability to obtain and sustain this employment does not suggest that she was able to work, as
18	found by the ALJ. Dkt. 10 at 16.  Even though Plaintiff was not ultimately hired for the
19	positions, the ALJ reasonably concluded that Plaintiff's attempts to find employment
20	undermined her allegation of an inability to work.  *See, e.g.*, *Bray v. Comm'r of Social Sec.*
21	*Admin.*, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (ALJ properly considered evidence of
22	claimant's attempts to find employment as undermining her claim of debilitating respiratory
23	illness).

ORDER REVERSING THE COMMISSIONER'S DECISION - 4

Lastly, the ALJ found Plaintiff engaged in mental health treatment inconsistently. Tr. 23-24. The ALJ noted Plaintiff experienced understandably increased symptoms during the time that her ex-husband kidnapped her daughter, but that Plaintiff's symptoms were generally controlled by medication and counseling. Tr. 23-24. Plaintiff argues the ALJ erred in failing to acknowledge her explanation for her inconsistent treatment, namely that Plaintiff was in denial about her need for treatment. Dkt. 10 at 16. Indeed, Plaintiff testified at the hearing she was in denial about her need for treatment between 2015 and 2017 (Tr. 79-82), and Plaintiff's problems accessing treatment are also documented in the treatment notes. *See, e.g.*, Tr. 762, 776, 791-92, 796, 803, 812. Plaintiff also reported breaking out in hives after revisiting her trauma in therapy. *See* Tr. 361, 703. The ALJ did not address these explanations provided at the hearing and in the treatment notes, and thus erred in discounting Plaintiff's allegations on this basis. *See* Social Security Ruling 16-3p, 2017 WL 5180304, at *9-10 (Oct. 25, 2017) ("[W]e will consider and address reasons for not pursuing treatment that are pertinent to an individual's case."). Accordingly, the ALJ harmfully erred in discounting Plaintiff's allegations of mental limitations on this basis and shall reconsider these allegations on remand.

**B.     Medical opinions**

Plaintiff argues the ALJ erred in discounting the opinions of treating physician Maria Lomarda, M.D., and treating therapist Gina Smith, B.S.W. The Court will address each disputed opinion in turn.

**1.     Dr. Lomarda**

Dr. Lomarda treated Plaintiff throughout the adjudicated period and completed a form opinion in August 2018 describing Plaintiff's symptoms and limitations. Tr. 856-57. Dr. Lomarda noted Plaintiff's MRIs were unremarkable, yet opined Plaintiff needed to lie down

1  during the day; elevate her legs during the day; could not work a full day due to symptoms;
2  would miss more than four days of work per month; and was "severely limited," meaning she
3  was unable to lift two pounds or could not stand and/or walk. *Id*.

4       The ALJ explained she gave little weight to Dr. Lomarda's opinion, finding the severe
5  limitations she described to be unsupported by her contemporaneous treatment notes. Tr. 25.
6  The ALJ also found no support in the record to support Dr. Lomarda's opinion that Plaintiff
7  would need to lay down and elevate her legs, or that she was unable to lift more than two
8  pounds. *Id*.

9       Plaintiff contends the ALJ's reasons are not specific and legitimate, as required in the
10 Ninth Circuit when discounting a treating doctor's contradicted opinion. Plaintiff points to the
11 various referrals Dr. Lomarda made, for imaging studies and to visit specialists, as evidence that
12 Dr. Lomarda believed Plaintiff's symptoms were more limiting than the ALJ acknowledged.
13 Dkt. 10 at 6. The ALJ acknowledged Dr. Lomarda tried many ways to treat Plaintiff's
14 complaints (Tr. 21-24), but Plaintiff has not pointed to any evidence contradicting the ALJ's
15 finding that Dr. Lomarda's treatment notes do not corroborate the severe limitations described in
16 the form opinion.

17      Furthermore, although Plaintiff argues (Dkt. 10 at 6-7) the ALJ erred in finding no
18 support in the record for Dr. Lomarda's opinions regarding Plaintiff's need to lie down and
19 elevate her legs, as well as the lifting restrictions she indicated, Plaintiff does not identify any
20 portion of the record that corroborates these limitations. Although Plaintiff points to her
21 allegation of pain with sitting or standing for a long time and suggests that such pain would
22 "invariably" require lying down (Dkt. 10 at 7), Dr. Lomarda herself indicated that Plaintiff's
23 difficulty with prolonged sitting or standing should be remedied by changing position. *See* Tr.

ORDER REVERSING THE COMMISSIONER'S DECISION - 6

856.  The ALJ included a sit/stand alternative in the RFC assessment.  Tr. 20.  Plaintiff has not shown that the ALJ erred in finding that the reclining and leg elevation pportions of Dr. Lomarda's opinion were not supported in the record.

Lastly, Plaintiff challenges the ALJ's discounting of Dr. Lomarda's opinion that Plaintiff was "severely limited."  As Plaintiff notes, the form Dr. Lomarda completed indicates that Plaintiff is "severely limited," meaning *either* that Plaintiff could not lift two pounds *or* that she was unable to stand and/or walk, but the ALJ only referenced the lifting element of the definition of "severely limited."  Dkt. 10 at 7 (citing Tr. 856).  According to Plaintiff, Dr. Lomarda could have been indicating Plaintiff was unable to stand and/or walk, due to her need to lie down and her pain with prolonged sitting and standing.  Dkt. 10 at 7.  But, as explained earlier, the ALJ reasonably found that a need for reclining was not indicated in the record, and pain with prolonged sitting and standing is not equivalent to an inability to stand and/or walk.  Plaintiff has not shown that the ALJ prejudicially erred in interpreting Dr. Lomarda's opinion that Plaintiff was severely limited.

Because the ALJ reasonably found that several portions of Dr. Lomarda's opinion were not supported by the record, the ALJ did not err in discounting the opinion on this basis.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record).  The Court affirms the ALJ's assessment of Dr. Lomarda's opinion.

**2.     Ms. Smith**

Ms. Smith, Plaintiff's treating therapist, completed a form mental source statement in September 2017, rating Plaintiff's mental limitations and opining that Plaintiff would be off-task at work more than 30% of the time and miss more than four days of work per month.  Tr. 744-

1  47. The ALJ summarized Ms. Smith's opinion and explained that she gave little weight to the

2  opinion because the marked and extreme limitations Ms. Smith indicated as to Plaintiff's deficits

3  in concentration, persistence, and pace were not consistent with the longitudinal record, and

4  appear to be based on self-reporting. Tr. 26.  The ALJ also noted Plaintiff inconsistently

5  engaged in treatment for her mental concerns, and yet the record shows that Plaintiff's mental

6  symptoms were "reasonably controlled with medication and counseling despite significant

7  situational stressors[.]"  *Id*.  Lastly, the ALJ pointed to generally normal mental status

8  examinations performed by treating providers as inconsistent with the extreme limitations

9  indicated by Ms. Smith.  *Id*.

10  The ALJ's first reason, Ms. Smith's marked and extreme ratings were inconsistent with

11  the record, is not supported by substantial evidence, because the record corroborates those

12  ratings.  For example, Plaintiff's therapists noted that Plaintiff experienced dissociative episodes

13  when triggered by flashbacks, and she would lose track of time.  *See, e.g.*, Tr. 800, 803, 806,

14  810, 811, 815.  The treatment notes document clinical concerns about Plaintiff's functioning, in

15  addition to documenting Plaintiff's self-reporting.  *See, e.g.*, Tr. 716, 778, 782-84.

16  Next, the ALJ found Ms. Smith's ratings were inconsistent with Plaintiff's sporadic

17  engagement with treatment during the adjudicated period.  But, as discussed above, the ALJ did

18  not address the explanation that Plaintiff provided at the hearing and in the treatment notes as to

19  why she struggled to keep her appointments: she was both in denial about her need for therapy

20  and struggled to acknowledge her long history of abuse (to the point that she broke out in hives

21  during an intake appointment), and she also missed many appointments during the time that her

22  daughter was kidnapped.  *See* Tr. 703, 709, 776.  She told her therapists that she was finally

23  seeking treatment because her doctor had noticed her mental symptoms and told her she needed

1 treatment. Tr. 709.  The ALJ's failure to address both Plaintiff's hearing testimony as well as the

2 explanations documented in the treatment notes undermines the ALJ's finding that Plaintiff's

3 sporadic treatment was inconsistent with severe limitations.

4      Lastly, the ALJ found Plaintiff's symptoms were reasonably controlled by medication

5 and counseling "despite significant situational stressors" (Tr. 26), but this finding is not

6 supported by substantial evidence.  Plaintiff's mental health treatment notes suggest that her

7 symptoms were not controlled and that her situational stressors were so extreme that they at

8 times prevented her from being able to address her mental health concerns. *See, e.g.*, Tr. 803,

9 804, 806, 807, 810-12, 815, 816.  Furthermore, although the ALJ pointed to some "largely

10 unremarkable more often than not" mental status examinations performed by physical treatment

11 providers, those examination results do not reference concentration, persistence, and pace (the

12 primary deficits at issue in Ms. Smith's opinion) and do not appear to reflect a full mental status

13 examination.  Tr. 26 (citing Tr. 402, 412, 542, 565).

14      Accordingly, because none of the ALJ's reasons to discount Ms. Smith's opinion is

15 supported by substantial evidence in the record, the Court finds that the ALJ did not provide

16 sufficient reasons to discount Ms. Smith's opinion.  On remand, the ALJ shall reconsider Ms.

17 Smith's opinion.

## CONCLUSION

19      For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is

20 **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

21      On remand, the ALJ shall reconsider Ms. Smith's opinion as well as Plaintiff's

22 allegations of mental limitations, develop the record and redetermine Plaintiff's RFC as needed,

23 and proceed to the remaining steps of the disability evaluation process as appropriate.

ORDER REVERSING THE COMMISSIONER'S DECISION - 9

DATED this 15th day of June, 2020.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge